# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT LONDON

| | |
|---|---|
| BENDA MAE HALL,<br>    **Plaintiff,**<br><br>V.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>    **Defendant.** | CIVIL ACTION NO. 6:13-CV-96-KKC<br><br>**MEMORANDUM, OPINION, & ORDER** |

**\*\*\* \*\*\* \*\*\***

Plaintiff Benda Mae Hall brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for supplemental security income. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hall filed her claim for benefits on August 16, 2007. (DE 10-1, p. 2). Her claim was initially denied and denied again on reconsideration. (DE 11, p. 1–2 ). Hall then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (DE 10-1, p.2). After the hearing, on February 17, 2009, the ALJ issued an unfavorable decision. (DE 11, p. 2). Hall appealed the ALJ's decision, and the Appeals Council ("AC") granted Hall's request for review, vacated the hearing decision, and remanded the case back to the ALJ. (DE 11, p. 2). After a supplemental hearing on December 7, 2011, the ALJ issued another unfavorable decision. (DE 11, p.2). The AC denied Hall's subsequent request for review. (DE 11, p. 2).

At the time the ALJ issued his opinion on January, 12, 2012, Hall was forty-seven years old. (DE 11, p.2). She has not worked in the past fifteen years, but has been employed as a nursing assistant previously. She alleges she became disabled on August 21, 2007. (DE 11, p. 2).

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F. 3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

> (1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.
>
> (2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.
>
> (3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
> (5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ

reaches the fifth step without finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404, 1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in gainful activity since August 21, 2007, the application date. (AR 19). At step two, the ALJ determined that Hall suffers from the following severe impairments: chronic low back pain secondary to degenerative disc disease of the thoracic and lumbar spine, status post L3-L4 discectomy, and history of T8 and T12 compression fractures; degenerative changes of the left hip; status post left shoulder rotator cuff debridement; and status post right wrist fracture with open reduction and internal fixation. (AR 19). In the third step, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 20).

At step four, the ALJ found that based on the medically determinable evidence, Hall has the residual function capacity ("RFC") to perform a wide range of light and sedentary work, lifting and carrying up to twenty pounds occasionally, ten pounds frequently, with sitting, standing and walking up to six hours each in an eight hour day. The ALJ further found that Hall requires a sit/stand option with no prolonged standing or walking in excess of forty-five minutes to one hour without interruption. She cannot climb ropes, ladders, and scaffolds or work in exposure to concentrated vibration. She is limited to no more than

occasional climbing of stairs and ramps.  She cannot crawl, stoop, crouch, kneel, or operate foot pedal control with her left leg and is limited to no more than occasional flexion and extension of her right wrist.  Finally, she can occasionally pinch, finger, and grasp with the right hand.  (AR 20).  The ALJ then determined that Hall is unable to perform any past relevant work.  (AR 22).

At step five, considering Hall's age, education, work experience, and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that the claimant can perform.  (AR 22).  The ALJ found Hall would be able to perform the requirements of an information clerk, a gate check, and non-hazardous security work.

The Appeals Commission subsequently denied Hall's request for review of the ALJ's January 2012 opinion.  (AR 9).  Hall has exhausted her administrative remedies and filed a timely action in this Court.  This case is now ripe for review under 42 U.S.C. § 405(g).

**II. GENERAL STANDARD OF REVIEW**

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards.  *See Cullip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In reviewing the decision of the Commissioner, courts are not to conduct a de novo review, resolve conflicts in the evidence,

4

or make credibility determinations. *See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**III. ANALYSIS**

On appeal, Hall argues that the ALJ's decision is not supported by substantial evidence and was not decided correctly for four reasons.

i.

Hall first maintains that the ALJ improperly discounted the opinion of her treating physician, Dr. Nickerson. (DE 10-1, p. 7). Treating-source opinions must be given controlling weight if "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). "If the Commissioner does not give a treating source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole . . . ." *Id.* (internal citations omitted). The ALJ must give "good reasons" for discounting the weight given to the treating source opinion. *Id.* Here, the ALJ's opinion satisfies this standard.

As an initial matter, Dr. Nickerson's conclusion that Hall was unable to work, is not entitled to significant weight, because the question of disability is ultimately reserved for the Commissioner. 20 C.F.R. § 416.927(d). Here, the ALJ ultimately rejected the

5

limitations listed by Dr. Nickerson because they were "not supported by acceptable medical evidence and are contradicted by other evidence and inconsistent with the evidence as a whole." (AR 22). The ALJ went on to find that the Dr. Nickerson's report was internally inconsistent and based on exaggerated complaints. (AR 22).

The ALJ found both that Dr. Nickerson's opinion was not well supported by the acceptable medical evidence, nor was it consistent with the substantial evidence in the case record. (AR 22). The ALJ gave the following reasons for declining to give Dr. Nickerson's opinion controlling weight, as well as for why he rejected Dr. Nickerson's asserted limitations:

- Dr. Nickerson's opinion was inconsistent with progress notes form March 2007 at the White House Clinic, which indicate that "claimant's musculoskeletal and neurological examinations were unremarkable [and that she] had no tenderness in the extremities/spine and her motor and sensory function was grossly intact." (AR 21).
- Dr. Nickerson's 2011 opinion letter, which indicated Hall could lift no more than ten pounds, was inconsistent with Dr. Nickerson's prior opinion letters that noted she could lift no more than 20 pounds. Dr. Nickerson did not provide reasoning for these new limitations, and Hall submitted no treatment records from Dr. Nickerson after 2009. (AR 21).
- The evidence indicates that Hall is able to drive, go out alone, prepare meals, and use public transportation. This evidence is inconsistent with the severity of Dr. Nickerson's findings (AR 22).
- While Hall claims she had fragments of bone removed from her spinal cord, the records indicate no bone fragments in the spine. (AR 21). Instead, the ALJ found exhibits that indicate only mild degenerative disc disease and no retropulsion of fragments into the canal to be compelling. (AR 21). Therefore, he found no reason for the severity of Hall's neck and back complaints. (AR 21).

Thus, the ALJ has provided good reasons to explain why he declined to give Dr. Nickerson's opinions controlling weight and explained why Dr. Nickerson's opinions are inconsistent with the evidence as a whole. Therefore, the ALJ's decision was supported by the substantial evidence.

**ii.**

Hall next contends that the ALJ erred in step 3 of his analysis and should have found that Hall's impairments meet the requirements of Listing Impairment 1.04A. Hall has not provided specific medical findings that satisfy all of the criteria for the particular listing alleged; "An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Substantial evidence supports the ALJ's finding that Hall's impairments did not meet the listing impairment. Listing 1.04 states in part,

> Disorders of the spine . . . resulting in compromise of a nerve root or the spinal cord with: A: Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . .

204 C.F.R. pt. 404, Subpt. P, App. 1, § 1.04. As the Commissioner indicates, "the diagnostic images of record do not indicate that Plaintiff's back condition resulted in 'compromise of a nerve root . . . or the spinal cord,' as required by Listing 1.04." (DE 11, p. 9). Hall's 2005 MRI showed stable but chronic T12 compression deformity and minimal retropulsion. (AR 320). Hall's physical examinations also indicate that she does not satisfy all of the criteria of Listing 1.04. Upon examination in 2007, Hall's motor and sensory functions were intact. (AR 233). In July 2007, Hall received a 5/5 motor strength in the right lower extremity and 4/5 on the left lower extremity. (AR 268). In April 2009, Hall was able to walk without assistance and exhibited no muscle asymmetry, atrophy, or involuntary movements. (AR 493). Thus, the ALJ's determination that Hall did not meet a listing impairment is supported by substantial evidence.

### iii.

Hall next contends that the vocational expert's ("VE") testimony did not support the ALJ's conclusion that jobs exist in significant numbers that Hall could perform. (DE 10-1, p. 12). She insists that, "the ALJ erroneously relied on the VE's response to the first hypothetical question as substantial evidence that there were a significant number of jobs in the national economy Ms. Hall could perform." (DE 10-1, p. 12). However, the ALJ properly relied on the VE's testimony when reaching his conclusion. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [claimant's] individual physical and mental impairments.'" *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The ALJ questioned the VE about what sorts of jobs exist that Hall could perform considering the ALJ's RFC finding. (AR 564). The VE at first responded that there would be a "small number of jobs this individual could perform." (AR 565). However, when the ALJ asked about positions such as an "information clerk [or] telephone receptionist," the VE responded that jobs would exist but at a reduced range. The VE went on to calculate the reduced number of jobs, considering Hall's limitations, and calculated that there would be "about 4,000 of these jobs in Kentucky, and in the United States, approximately 300,000 . . . ." (AR 566). The ALJ next asked about nonhazardous security work, to which the ALJ estimated that there existed about 500 in Kentucky and 190,000 nationally." (AR 566). These numbers represent a significant number of jobs. The Court of Appeals "has held that fewer than 1000 regional jobs can be a significant number for purposes of determining whether a claimant is disabled." *Anderson v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 32, 35

(6th Cir. 2010) (citing *Martin v. Comm'r*, 170 Fed. Appx. 369, 375 (6th Cir. 2006)).  Here, the number of jobs available is significant.

To the extent that Hall implies that the ALJ was unsatisfied with the VE's original answer, and coaxed the VE into answering about specific jobs, the record does not reflect any improper questioning by the ALJ.

Finally, Hall argues that the ALJ erred when he indicated that Hall could perform the occupation of a gate checker, but such an error is harmless.  While "gate check" was not an occupation explicitly contemplated by the VE, information clerk and non-hazardous security worker were discussed, and the VE found that such jobs exist in the regional and national economy.  Therefore, remanding this matter only to correct a harmless error would be a waste of judicial and administrative resources.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001).

### iv.

Hall lastly argues that the ALJ erred at step five by not relying on the limitations reported by Dr. Nickerson.  (DE 10-1, p.13).  This is essentially a reiteration of her previous argument.  As this Court already has found, the ALJ had substantial evidence to decline to give Dr. Nickerson's opinion controlling weight, and properly rejected it.  Therefore, the ALJ properly declined to rely on the VE's response to the hypothetical question that included Dr. Nickerson's limitations.  *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001).

**IV. CONCLUSION**

For the reasons stated above, **IT IS ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 10) is **DENIED**;

2. The defendant's motion for summary judgment (DE 11) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated this 16th day of July, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY